DECISION
Following a trial on the merits, a jury found Defendants Rhode Island Economic Development Corporation (RIEDC) and D'Ambra Construction Company, Inc. (D'Ambra) (collectively, Defendants) jointly and severally liable on a claim for negligent construction and/or maintenance. It awarded Plaintiff George D. Berganza, d/b/a/ M G Transportation (Plaintiff) damages in the amount of $70,000, plus interest. Thereafter, Defendants filed renewed Motions for Judgment as a Matter of Law or, in the alternative, Motions for a New Trial. Jurisdiction is pursuant to G.L. 1956 § 8-2-14, Super. R. Civ. P. 50, and Super. R. Civ. P. 59.
 I Facts and Travel
George D. Berganza (Mr. Berganza) owns and operates a trucking company known as MG Transportation. On July 1, 2004, he was operating his tractor-trailer on Compass Circle in North Kingstown, Rhode Island, a public way, when the road suddenly collapsed causing the tractor-trailer to jack-knife under its load. The tractor-trailer's passenger-side rear tires sank into the resulting hole, and both the tractor and the trailer sustained damages as a result. *Page 2 
It is undisputed that defendant RIEDC owned the subject property, and that in 1997, D'Ambra installed a sixteen inch water main beneath the road pursuant to a contract with RIEDC. On February 14, 2005, Plaintiff filed the instant three-count action against Defendants for compensatory damages including, but not limited to, the cost of repairing and/or replacing the tractor-trailer. It alleged that both RIEDC and D'Ambra were liable for (1) negligent construction and/or maintenance; (2) negligent failure to warn; and (3) nuisance. It is undisputed that the road collapse was caused by a broken water main beneath the road which had undermined the asphalt roadway; however, the parties disagree about the cause of said water-main collapse.
On June 2, 2008, just before the commencement of trial, RIEDC filed a motion in limine seeking to exclude the testimony of Plaintiff's proposed expert, civil engineer Peter Alviti ("Mr. Alviti"). D'Ambra did not file such a motion. After a brief conference in chambers, RIEDC withdrew its motion; thereafter, the parties presented both testimonial and documentary evidence to the jury.
At the trial, Plaintiff proffered Mr. Alviti as its expert witness. After being qualified as an expert, without objection, Mr. Alviti testified that he had reviewed photographs of the site, as well as records provided by Defendants concerning the construction of the water main. He stated that one of those records showed that on August 12, 1997, a 205 lbs. per-square-inch hydrostatic-pressure test ("the test") was performed between stations 1 and 28 on the water main that D'Ambra had installed beneath Compass Circle. A 5 lbs. per-square-inch drop in pressure was recorded after one hour of testing. Mr. Alviti observed that in spite of this drop in pressure, no additional tests on the water main were performed. *Page 3 
Based upon the documentary evidence, Mr. Alviti concluded that the leak and road collapse occurred between stations 1-28; specifically, between stations 14-16. He opined, without objection, that the results of the test indicated that the water main had a leak at the time the test was performed. He then concluded that the water-main collapse was caused by the improper installation, operation, and/or maintenance of the water main. Mr. Alviti further testified that the evidence demonstrated that Defendants knew, or should have known, both that the water main was leaking and that it foreseeably would fail as a result. He further opined that Defendants departed from the accepted standard of care in the engineering field, as set forth in the American Water Works Association (AWWA) manual, when they failed to conduct additional testing after receiving the initial test results.
At the close of Plaintiff's case, both Defendants moved for a Judgment as a Matter of Law pursuant to Super. R. Civ. P. 50. The motions were denied. At the close of all of the evidence, the Court denied Defendants' renewed Motions for a Judgment as a Matter of Law. The Court gave its instructions and the case was submitted to the jury.
The Court instructed the jury that D'Ambra was an independent contractor and that generally, an employer is not liable for the acts of an independent contractor. Additionally, the jury was instructed on the theory of res ipsa loquitur. Thereafter, the jury found RIEDC and D'Ambra jointly and severally liable on the claim of negligent construction and/or maintenance, and it awarded Plaintiff damages in the amount of $70,000. D'Ambra and RIEDC then renewed their Motions for Judgment as a Matter of Law or, in the alternative, they sought a New Trial.[1] The Court heard oral arguments on the motions and now will render a decision. Additional facts will be supplied as needed. *Page 4 
 II Standard of Review
Rule 50 of the Superior Court Rules of Civil Procedure governs Motions for Judgment as a Matter of Law. It provides in pertinent part:
 "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Super. R. Civ. P. 50(a)(1).
When addressing a renewed Motion for Judgment as a Matter of Law, the trial justice must "`consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion. . . .'" Blue Coast, Inc. v.Suarez Corp. Indus., 870 A.2d 997, 1009 (R.I. 2005) (quoting AAA PoolService Supply, Inc. v. Aetna Casualty and Surety Co., 479 A.2d 112,115 (R.I. 1984)).
The motion must be denied "if there are factual issues upon which reasonable people may have differing conclusions." Broadley v.State, 939 A.2d 1016, 1020 (R.I. 2008). "However, if the only reasonable conclusion that can be drawn from the evidence is that the plaintiff is not entitled to recover, then the motion must be granted." Kenney Mfg.Co. v. Starkweather Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994) (citing Hulton v. Phaneuf, 85 R.I. 406, 410, 132 A.2d 85, 88 (1957)). Thus, for Defendants to prevail on their motions, the Court must find that no reasonable jury could have found for Plaintiff based upon the evidence presented. See McLaughlin v. Moura, 754 A.2d 95, 98 (R.I. 2000). *Page 5 
Rule 59 of the Superior Court Rules of Civil Procedure governs the granting of a new trial. It provides in pertinent part:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state." Super. R. Civ. P. 59(a).
When ruling on a motion for a new trial, the trial justice functions as a "superjuror." Candido v. University of Rhode Island, 880 A.2d 853,856 (R.I. 2005). In carrying out that role, the trial justice must review the evidence and assess credibility. Crafford Precision ProductsCo. v. Equilasers, Inc., 850 A.2d 958, 963 (R.I. 2004). Accordingly, the trial justice, as the superjuror,
 "is required to independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand." Martinelli v. Hopkins, 787 A.2d 1158, 1165 (R.I. 2001) (quoting Graff v. Motta, 748 A.2d 249, 255 (R.I. 2000)).
A trial justice's decision on a motion for a new trial "will be accorded great weight and will be disturbed only if it can be shown that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Id.
 III Analysis
In its renewed Motion for Judgment as a Matter of Law, D'Ambra asserts that Plaintiff failed to establish the applicable standard of care through its expert Mr. Alviti; failed to establish that D'Ambra breached its duty of care; and failed to demonstrate that D'Ambra's negligence was the proximate cause of Plaintiff's damages. D'Ambra further contends that Mr. Alviti's *Page 6 
testimony should have been precluded because it was scientifically unreliable and without foundation. D'Ambra also contests the jury's award of $70,000 in damages, maintaining that the amount is unsupported by the evidence and that the Plaintiff is prohibited from recovering this amount because he made no attempts to mitigate his damages.
RIEDC asserts in its renewed Motion for Judgment as a Matter of Law that Mr. Alviti's testimony was scientifically unreliable and was without foundation. It also contends that the jury improperly disregarded the Court's instructions that RIEDC could not be held liable for any negligence on the part of independent contractor D'Ambra in the construction of the water main. RIEDC further asserts that the Plaintiff failed to demonstrate negligence on the part of RIEDC, and that the doctrine of res ipsa loquitur did not apply because Plaintiff failed to adduce competent evidence to satisfy the elements of that doctrine.
In the alternative, both Defendants move for a new trial asserting that the verdict failed to administer substantial justice between parties and was not supported by a fair preponderance of evidence. D'Ambra additionally asserts that the Court erred in allowing Mr. Alviti to testify because his testimony was scientifically unreliable and speculative and should not have held any evidentiary value. D'Ambra also maintains that the collapse of a water main did not justify an inference of negligence under the doctrine of res ipsa loquitur and that the jury instruction on this theory constituted error as a matter of law. Finally, D'Ambra again contends the Plaintiff's evidence on damages did not establish the Plaintiff's entitlement to an award of $70,000, and it maintains that the award was excessive because Plaintiff failed to mitigate his damages. *Page 7 
 A The Expert Testimony
D'Ambra asserts that Mr. Alviti's expert testimony failed to establish the local standard of care applicable to the testing of a 16-inch water main, and it challenges his conclusion that a leak was present during the test conducted on August 12, 1997. It also maintains that Mr. Alviti was unfamiliar with national leakage and hydrostatic pressure testing standards, including those of the AWWA. As a result, D'Ambra contends that Mr. Alviti's conclusions were scientifically unreliable, lacked adequate foundation, and were speculative and unsupported by the evidence. D'Ambra further maintains that Mr. Alviti's testimony did not establish a breach of duty that was causally related to the water main failure.
The Plaintiff disputes D'Ambra's characterization of Mr. Alviti's testimony. It maintains that Mr. Alviti's uncontested testimony established the applicable standard of care, the duty owed, and a breach of that duty that directly caused the water main to collapse. The Plaintiff further avers that Defendants failed to timely object to the expert testimony and, therefore, have failed to preserve this issue.
Although Rule 59 "permits alleged errors of law to be addressed in the context of a motion for a new trial[,] . . . it would be a mistake to read that language as authorizing a party to raise an entirely new issue at the Rule 59 stage." Tyre v. Swain, 946 A.2d 1189, 1202 (R.I. 2008). The reason for this is that "[s]uch a reading would be inconsistent with the venerable and frequently articulated principle that contentions not raised at trial are deemed waived." Id.
In the instant matter, RIEDC filed a motion in limine seeking to exclude Mr. Alviti's expert testimony; it withdrew that motion before trial, and D'Ambra never filed any such motion. Mr. Alviti's curium vitae were offered into evidence, and he was qualified as an expert witness *Page 8 
on the stand, all without objection. With one exception, Mr. Alviti offered his expert opinion on direct examination without objection. Neither Defendant filed a motion to strike Mr. Alviti's testimony, nor did either Defendant ask the Court to instruct the jury to disregard his opinion.[2]
As Defendants did not object to Mr. Alviti's expert testimony at any point prior to jury deliberations, they failed to preserve the issue for this Court's consideration. Furthermore, even had Defendants timely objected on the basis that Mr. Alviti's testimony was scientifically unreliable and unfounded and that he had failed to establish the local standard of care applicable to the testing of a 16-inch water main, the Court concludes that they would not have prevailed.
Like all other testimony, "[t]he purpose of expert testimony is to aid in the search for the truth." Morra v. Harrop, 791 A.2d 472, 477 (R.I. 2002). As such testimony "need not be conclusive and has no special status in the evidentiary framework of a trial[,] . . . a jury is free to accept or to reject expert testimony in whole or in part or to accord it what probative value the jury deems appropriate." Id.
The decision to admit expert testimony "rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." Harvard Pilgrim Health Care of New England,Inc. v. Rossi, 847 A.2d 286, 293 (R.I. 2004) (quoting Graff,748 A.2d at 252). Furthermore, "[i]ssues of credibility are questions of fact."Harvard, 847 A.2d at 293. *Page 9 
Rule 702 of the Rhode Island Rules of Evidence regulates the admission of expert testimony. That rule provides:
 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion." R.I. R. Evid. 702.
It is clear that "[t]his language makes no relevant distinction between `scientific' knowledge and `technical' or `other specialized' knowledge." Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 147
(1999) (holding that a trial justice's basic gatekeeping obligation set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) applies not just to scientific testimony, but to all expert testimony). Instead, the language contained in Rule 702 "makes clear that any such knowledge might become the subject of expert testimony." Kumho TireCompany, Ltd., 526 U.S. at 147.
In determining whether an expert is qualified, the trial justice considers "evidence of the witness's education, training, employment, or prior experiences." State v. D'Alessio, 848 A.2d 1118, 1123 (R.I. 2004) (quoting State v. Villani, 491 A.2d 976, 979 (R.I. 1985)). In situations where a party proffers "novel or highly complex scientific or technical expert testimony, the trial justice may admit the expert testimony only if the expert proposes to testify to (1) scientific [technical, or other specialized] knowledge that (2) will assist the trier of fact."Id. (internal citation and quotations omitted). "Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases." Kumho Tire Company, Ltd., 526 U.S. at 150. Furthermore, "[h]elpfulness to the trier of fact is the most critical consideration for the trial justice in determining whether to admit proposed expert testimony." In re Mackenzie C., 877 A.2d at 683. *Page 10 
In considering the reliability and validity of the proposed expert testimony, "the trial justice examines four non-exclusive factors in determining whether expert testimony about novel or technically complex theories or procedures. . . ." Id. These factors are
 "(1) whether the proffered knowledge has been or can be tested; (2) whether the theory or technique has been the subject of peer review and publication; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique has gained general acceptance in the . . . [relevant] community. . . . Satisfaction of one or more of these factors may be sufficient to admit the evidence and each factor need not be given equal weight in the analysis. . . . The court may also consider the qualifications of the expert in determining whether the underlying methods are reliable." Id. at 683-84.
The trial justice then "examines whether the expert's testimony is sufficiently tied to the facts of the case such that it will aid the fact-finder in resolving a factual dispute." Id. at 684 (internal quotations omitted). Accordingly, "[i]f the testimony logically advances a material aspect of the proposing party's case . . . [] the court may deem it relevant and admissible." Id. (internal quotations omitted). However, it is without question that "an expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion." Alterio v. Biltmore Construction Corp., 119 R.I. 307, 312,377 A.2d 237, 240 (1977); see also R.I. R. Evid. 705.[3] The facts upon which an expert opinion is based must be specifically set forth; otherwise it is impossible to assess whether the conclusions drawn from the facts possess sufficient probative force rather than being grounded in mere speculation or conjecture. See Alterio, 119 R.I. at 313,377 A.2d at 240.
If an expert's testimony is given with the requisite degree of certainty, that is, "some degree of positiveness," it matters not what specific words are used to convey that certainty or *Page 11 
whether the word "possibility" was uttered." Morra v. Harrop,791 A.2d 472, 477 (R.I. 2002) (citing Sweet v. Hemingway Transport, Inc.,333 A.2d 411, 415 (R.I. 1975)). Absolute certainty, of course, is not required because "[i]n those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question `most probably' came from the cause alleged." Id. If the expert has testified with "some degree of positiveness," his or her testimony is admissible and issues relative to the weight of the evidence are left to the fact-finder. Sweet, 333 A.2d at 415.
In the instant matter, Plaintiff submitted Mr. Alviti's curriculum vitae, as well as an affidavit from him outlining his proposed testimony. The curriculum vitae indicates that Mr. Alviti has earned two Bachelor of Science degrees — the first in 1972 for Construction Technology, the second in 1976 for Civil Engineering — and that he is currently registered as a Professional Engineer both in Rhode Island and Massachusetts.
Mr. Alviti's career as a professional engineer spans over thirty years and includes such positions as the Director of Public Works for the City of Cranston (1993-1999); owner of a company that provided civil and environmental engineering services (1978-1993); and various other engineering positions (1969-1978). Many of the engineering services that Mr. Alviti has provided over the years involve water supply issues including drainage and treatment plant design projects; storm water management analyses and design; wastewater management studies for the states of Rhode Island and Virginia; site surveys and soil testing and analyses; roadway and dam design. Furthermore, during the course of his career, Mr. Alviti has testified before zoning boards, city councils, various state agencies, as well as presenting expert witness testimony in courtrooms. Mr. Alviti also has served on numerous commissions and boards, and *Page 12 
was a contributing author to a publication entitled "Reinventing Water and Wastewater Systems: Global Lessons for Improving Water Management."
In his affidavit, Mr. Alviti stated that he had reviewed photographs of the scene of the water-main collapse, as well as various documents related to the area in question. He further stated that "[a]fter reviewing these items, and based upon my education, training and experience, I have determined that the water main was a 16" PVC water main which sustained a longitudinal crack." Affidavit of Peter Alviti,Jr. at 2.
D'Ambra asserts that Mr. Alviti's expert opinion was so scientifically unreliable such that it should not have been proffered to the jury or considered by the jury. However, the Court is more than satisfied that Mr. Alviti's specialized engineering education, training, knowledge, and experience qualified him to testify as an expert. The Court is further satisfied that Mr. Alviti's expert testimony was sufficiently tied to the facts of the case such that it was intended to aid the jury in its search for the truth.
In light of the foregoing, the Court concludes that it was not error to admit Mr. Alviti's testimony. Consequently, the Court denies the Motions for Judgment as a Matter of Law and for a New Trial based upon Mr. Alviti's alleged improper qualification as an expert. The next issue to be addressed is whether Mr. Alviti's actual trial testimony was speculative and without foundation.
In this case, the jury had before it for its consideration uncontroverted evidence that, pursuant to a contract with RIEDC, in 1997, D'Ambra constructed and installed under Compass Circle a water main with a life expectancy of approximately one hundred years. Approximately seven years later, the water-main suddenly collapsed under Plaintiff's tractor-trailer. *Page 13 
Mr. Alviti testified on direct examination that he had reviewed records provided by D'Ambra, as well as photographs taken of the broken water main. He testified that on August 12, 1997, the water main was pressure tested between stations 1 and 28 on Compass Circle. He observed that the result of the test indicated a 5 lbs. per-square-inch drop in pressure after one hour of testing. Mr. Alviti opined that such a drop in pressure demonstrated that there was a leak in the water main between stations 1 to 28. He further opined that this leak would cause the compacted material surrounding and supporting the water main to erode and eventually cause the water main itself to collapse. He then observed that subsequently, the water main did, in fact, collapse between stations 14 and 16. Accordingly, he opined, to a reasonable degree of engineering certainty, that the leak directly caused the water main to collapse.
Mr. Alviti further stated that both Defendants either knew, or should have known, that unless remedial measures were taken to address the leak, it was foreseeable that the water main failure would occur well before the running of its one-hundred year life expectancy. He opined that the accepted standard of care in the engineering field, as set forth by AWWA, would have been to conduct a second test to determine the volume of water leaking from the water main. Mr. Alviti testified that Defendants departed from this accepted standard of care when they failed to conduct additional testing after receiving the initial test results. This conclusion was supported by the RIEDC's expert witness and professional engineer, Mr. Steven M. Clarke (Mr. Clarke), who also testified that AWWA standards require an additional test when a leak is detected. Mr. Alviti concluded that the water-main collapse was caused by the improper installation, operation, and/or maintenance of the water main.
During cross-examination, Defendants attempted to discredit Mr. Alviti's testimony on the basis that he was unfamiliar with specific testing standards required by local and national *Page 14 
regulations. Mr. Alviti conceded that although he may have been unfamiliar with certain local and national standards applicable to hydrostatic pressure and leakage tests, that his testimony involved conventional and universally accepted engineering methodology, concepts, and principles. He also stated that a 5 lbs. per-square inch drop in pressure would be acceptable for tests performed at 205 lbs. per-square inch in pressure.
Mr. Clarke testified that according the AWWA standards, the test should have been conducted at 200 lbs. per-square inch rather than at 205 lbs. per-square inch. He concurred with Mr. Alviti that once the leak was detected, AWWA standards call for a second test to determine whether the water main was leaking more than 5.59 gallons-per-hour. Mr. Clarke could not explain why the second test was not conducted. D'Ambra's expert witness, Mr. Wilkins, surmised that the 5 lbs. per-square inch difference in pressure between the AWWA standard, and the test actually given, provided Defendants with a 5 lbs. per-square inch "cushion" on the AWWA standard. Both defense experts proffered different possible causes for the leak and water-main collapse. At trial, the jury also learned that not only was a second test not performed as a result of the August 12, 1997 test, but that no further work was conducted on the water main after those results. The jury further learned that both Defendants were aware of the test results when RIEDC signed off on the contract with D'Ambra.
Viewing this evidence in the light most favorable to Plaintiff, and without weighing it or passing upon the credibility of the witnesses, the Court concludes that a reasonable jury could have found for Plaintiff based upon the Mr. Alviti's testimony and evidence. After his qualifications properly were established, Mr. Alviti outlined his examination of the records concerning the construction of the site and of the photographs he viewed of the collapsed water main. While defense experts arrived at different conclusions than Mr. Alviti, his testimony was *Page 15 
based upon conventional and universally accepted engineering methodology, concepts, and principles. Taking the record into consideration, the Court is of the opinion that Mr. Alviti's conclusions were sufficiently supported by facts and data. Consequently, the Motions for Judgment as a Matter of Law with respect to the admission of Mr. D'Ambra's testimony would have been denied had this issue been preserved. The Court will next address the Motions for a New Trial regarding the expert testimony.
As superjuror, the Court must independently weigh, evaluate, and assess the evidence and the credibility of the trial witnesses. The Court finds that Mr. Alviti credibly opined to a reasonable degree of engineering certainty that the August 12, 1997 test indicated a leak in the water main. Although Mr. Alviti could not rule out other causes for the water-main collapse, he credibly testified that it probably was caused by the leak. Furthermore, while Defendants' experts identified other possible causes of the collapse, they both admitted that they had no evidence to support such theories.
Mr. Alviti noted that the August 12, 1997 test was conducted between stations 1 and 28 and that the water-main collapse occurred between stations 14 and 16. While he could not pinpoint the exact location of the leak, his conclusion that it occurred within the test zone was credible and supported by the records. Mr. Alviti also credibly opined with the requisite degree of engineering certainty and probability that due to the young age of the pipe, the accident on July 1, 2004 was caused by the improper installation, operation, or maintenance of the water main. Thus, his conclusion that negligent construction and/or maintenance of the water main proximately caused the water main to collapse accident was not clearly wrong.
While Mr. Alviti did not visit the site, conduct any forensic testing of the pipe, and was unfamiliar with certain standards and procedures in the installation of the water main, the Court *Page 16 
does not agree that Mr. Alviti's opinions were based on inadequate factual foundation. It was sufficient for Mr. Alviti to achieve a meaningful conclusion from the evidence based on his education, experience, and scientific reasoning as a civil engineer for the knowledge to go before the jury. See State v. Vaccaro, 111 R.I. 59, 67,298 A.2d 788, 792 (R.I. 1973) (observing that "[e]xperience, education, and scientific facts, not conjecture, produced [the expert's] testimony"); . Mr. Alviti's conclusion that the test revealed a leak in the water main, combined with his conclusion that failure to conduct an additional test was a departure from the accepted standard of care, was supported by Mr. Clarke's expert testimony.
Based upon the foregoing, the Court concludes that the evidence is evenly balanced such that reasonable minds, in considering that same evidence, could come to different conclusions. Consequently, even had Defendants preserved their objections to Mr. Alviti's expert testimony, the Motions for a New Trial on this issue would have been denied.
 B The Jury Instructions
RIEDC asserts that the jury improperly disregarded an instruction concerning independent contractors; namely, that RIEDC could not be held liable for the negligent actions, if any, of its independent contractor, D'Ambra. Both Defendants additionally assert that the Court erred as a matter of law when it gave a jury instruction based upon the doctrine ofres ipsa loquitur.
Pursuant to G.L. 1956 § 8-2-38, a trial justice is required "to instruct the jury on the law to be applied to the issues raised by the parties." Maglioli v. J.P. Noonan Transp., Inc., 869 A.2d 71, 75 (R.I. 2005) (quoting Malinowski v. United Parcel Service, Inc., 792 A.2d 50,55 (2002)).[4] *Page 17 
In doing so, the Court is obligated to instruct the jury on the law with "precision and clarity." Maglioli, 869 A.2d at 75 (quoting Baccari v.Donat, 741 A.2d 262, 264 (R.I. 1999)). Jury instructions should be reviewed "as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them."Id. Viewing the instructions as a whole, it is axiomatic that "[a]n erroneous charge warrants reversal only if it can be shown that the jury `could have been misled' to the resultant prejudice of the complaining party." Id.
Assuming that the jury instructions were proper, the Court may grant a new trial when "`the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy.'" Blue Coast, Inc. v. SuarezCorp. Industries, 870 A.2d 997, 1008 (R.I. 2005) (quoting CraffordPrecision Products Co. v. Equilasers, Inc., 850 A.2d 958, 963 (R.I. 2004)). Conversely, if erroneous jury instructions were given, then the Court may grant a new trial pursuant to Super. Ct. R. Civ. P. 59(a).See Children's Friend Service v. St. Paul Fire Marine Ins. Co.,893 A.2d 222, 230 (R.I. 2006). Determining whether a jury instruction is erroneous is a question of law. See Maglioli, 869 A.2d at 75.
 1 The Independent Contractor Instruction
RIEDC asserts that the jury improperly disregarded the Court's instruction that RIEDC could be not held liable for the negligent actions, if any, of its independent contractor, D'Ambra. The Court, however, does not agree that the jury disregarded its instruction.
At the conclusion of the trial, the Court gave the following instruction: *Page 18 
 "It is the general rule that one who hires an independent contractor is not responsible for the negligent acts of that contractor or that contractor's employees in the manner and method of performing the work for which the independent contractor was hired. An independent contractor is one who's engaged to perform services for another according to its own skill and judgment as to the manner or method of performance, free from the control and direction of the person for whom the services are being performed in all matters connected with the manner or method of performance except as to when and where in general it should be done and the results or product of the work. As a matter of law I direct you that D'Ambrea was an independent contractor while constructing the water line system for Rhode Island Economic Development Corporation." Trial Transcript at 59 (emphasis added).
Thus, according to the general rule, RIEDC could not be held liable for any negligence that may have been committed by D'Ambra while performing its work as an independent contractor. RIEDC contends that Plaintiff failed to prove any negligence on the part of RIEDC; consequently, it asserts that judgment should be entered in its favor as a matter of law.
It is undisputed that D'Ambra was an independent contractor when it was engaged by RIEDC to install a water main under Compass Circle in North Kingstown. As already noted, the general rule is that one who employs an independent contractor will not be liable for the negligence of that contractor. See Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117
(R.I. 2004); see also Ballet Fabrics, Inc. v. Four Dee Realty Co.,Inc., 112 R.I. 612, 617, 314 A.2d 1, 4 (1974) ("[O]ne who engages an independent contractor to perform work is not liable for the negligent acts of the contractor or his employees in performing th[at] work. . . ."). Thus, it is the "independent contractor, not the owner, [who] is liable to third parties for all damages arising from his negligence while the work is in progress, is under his exclusive control, and hasnot been accepted by the owner." Bromaghim v. Furney, 808 A.2d 615, 617
(R.I. 2002) (citing Read v. East Providence Fire District, 20 R.I. 574,578, 40 A. 760, 761 (1898)) (emphasis added). *Page 19 
However, "[a]lthough one who employs an independent contractor may escape liability for such contractor's negligence, the employer is nevertheless answerable for its own negligence." See 41 Am. Jur. 2dIndependent Contractors § 28 (2005). Thus, an exception to the general rule is when
 "recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, the action must fail unless the plaintiff can at least show that, in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted." Id. at § 29.
Additionally, where an employer is aware of unlawful actions taken by its independent contractor, the employer may be found liable if it nevertheless ratifies the contract. See id. at § 32.
In the instant matter, Plaintiff alleges that the negligent act in this case was the failure to conduct a second test when the result of the first test demonstrated that there was a leak in the pipe, and it maintains that the failure to find and fix that leak resulted in the later collapse of the water main.[5] The Plaintiff further contends that RIEDC was aware that the second test had not been performed but, nevertheless, ratified the contract despite the fact that it was foreseeable that the failure to perform a second test could lead to the water-main collapse.
After considering the evidence in the light most favorable to Plaintiff, without weighing the evidence or considering the credibility of the witnesses, this Court finds a reasonable jury could have concluded that the first test revealed a leak, and that the failure to conduct a second test to identify the source of the leak and repair it, directly caused the water main to collapse. It also could have concluded that D'Ambra's failure to conduct the additional test, and RIEDC's *Page 20 
failure to insist that the test be performed, combined with its ratification of the contract, constituted negligence, and that said negligence was the concurring proximate cause of Plaintiff's injuries. Accordingly, a reasonable jury could have concluded that although RIEDC was not responsible for D'Ambra's work as an independent contractor, it was responsible to control and direct the results or product of that work, and that it negligently failed to do so, thus warranting a finding of joint and several liability. Consequently, the RIEDC's Motion for Judgment as a Matter of Law on this issue must be denied.
 2 The Res Ipsa Loquitur Instruction
Both D'Ambra and RIEDC seek the Court to declare that it erred as a matter of law when it gave a jury instruction based upon the doctrine ofres ipsa loquitur.[6] RIEDC seeks the Court to reverse the jury verdict and grant its Judgment as a Matter of Law because, it asserts, Plaintiff did not adduce competent evidence to satisfy the elements of that doctrine. Likewise, D'Ambra has petitioned the Court to reverse the jury verdict on this issue; however, it seeks a new trial instead.
In the seminal case of Parrillo v. Giroux Co., Inc. 426 A.2d 1313
(R.I. 1981), our Supreme Court explicitly adopted the evidentiary rule set forth in § 328(D) of the Restatement (Second) Torts (1965), entitled "Res Ipsa Loquitur." That section provides: *Page 21 
 "(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
 (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
 (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
 (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
 (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
 (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached." Restatement (Second) Torts § 328 (1965).
The Court observed that "[t]he Restatement disavows the requirement of exclusive control" and that negligence may be inferred in situations where "other responsible causes . . . are sufficiently eliminated by the evidence." Parrillo, 426 A.2d at 1320 (quoting Restatement (Second)Torts § 328(D)(1)(b) (1965)). While "[e]xclusive control may eliminate other causes, . . . the critical inquiry is not control, but whether a particular defendant is the responsible cause of the injury."Id. (citing Restatement (Second) Torts § 328(D), comment g at 161 (1965)); see also Thompson v. Burke Engineering Sales Co.,106 N.W.2d 351, 354 ((Iowa 1960) ("Control is not necessarily a control exercised at the time of the injury, but may be one exercised at the time of the negligent act which subsequently resulted in an injury.") (Internal quotations omitted.) Furthermore, "the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he [or she] make out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant." Id.
At the conclusion of the evidence, the Court instructed the jury as follows:
 There's a doctrine, the [L]atin term is res ipsa loquitor, what it means is the thing speaks for itself. This doctrine allows you to infer from the evidence that a defendant was negligent even where there's only circumstantial evidence and no direct evidence of a *Page 22 
defendant's negligence. The doctrine may be inferred or may infer that the harm suffered by the plaintiff is caused by a defendant's negligence when an event is of a kind which ordinarily does not occur in the absence of negligence when other responsible causes, including the conduct of the plaintiff and third persons other than the defendants, are sufficiently eliminated by the evidence and when the negligent action or actions fall within the scope of a defendant's duty to the plaintiff. If you find that the incident at issue in this case is of a kind which ordinarily does not occur in the absence of negligence and if you find that other reasonable causes including the conduct of the plaintiff and third persons other than the defendant are sufficiently eliminated so that it's reasonable to conclude that a defendant's negligence is the more probable explanation for its causes, then you may infer that one or both defendants was negligent in causing this incident. On the other hand, if you find that the incident is one which ordinarily occurs in the absence of negligence or if you find that it is at least equally probable that the negligence was that of some third person other than the defendants, then the law does not permit you to find that the defendants['] negligence has been established by this doctrine." Trial Transcript at 56-57.
In this case, it was not beyond the ken of the jury to infer negligence due to the collapse of the water main because such an event ordinarily does not occur in the absence of negligence. See Romero v.Truchas Mut. Domestic Water Consumer and Mut. Sewage WorksAssociation, 908 P.2d 764, 769 (N.M.Ct.App. 1995) ("[W]ater mains which are properly laid . . . ordinarily do not break, any more than ordinarily trains are derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence. . . .") The jury's verdict further indicates that it found Mr. Alviti's testimony to be persuasive and that any other possible causes of the collapse were not proven by the evidence.
After considering the evidence in the light most favorable to Plaintiff, and without weighing the evidence or considering the credibility of the witnesses, this Court finds that a reasonable jury could have found that a leak was detected during the first test; that the AWWA testing standards called for a second test to determine the extent of the leak and to repair it, if *Page 23 
necessary; that both Defendants were aware of the leak; and that this awareness created a duty which Defendants breached when they failed to conduct the second test. It further could have found that that the leak eventually would undermine the water main's foundation causing it to collapse; that although D'Ambra installed the pipe, RIEDC did at all times possess and retain the ultimate authority to approve or reject D'Ambra's work, and that RIEDC did approve the work despite D'Ambra's failure to perform the second test; and that defendants' actions, or inactions, caused Plaintiff's injuries.
Based upon the foregoing, the Court denies RIEDC's Motion for Judgment as a matter of law for the alleged erroneous res ipsa loquitur
instruction. As superjuror, the Court next will address D'Ambra's Motion for a New Trial based upon the same allegation of error.
As already stated, this Court finds Mr. Alviti's expert testimony and conclusions to be credible. His experience and credentials were impressive, and the Court finds that his conclusion that the August 12, 1997 test evidenced a leak in the water main was supported by the record. He also credibly testified that AWWA standards require a second test when a leak such as this one is detected, and that failure to conduct such a test constituted a deviation from that standard. This conclusion was supported by RIEDC's expert witness Mr. Clarke, who was unable to explain why the second test was not conducted. Furthermore, although Defendants' experts theorized about other possible causes of the water-main collapse, reasonable minds could have concluded that they failed to present sufficient persuasive evidence to support those theories. As a result, the jury reasonably could have concluded that all other possible causes were sufficiently eliminated by the evidence
The record evidence revealed that the test was conducted between stations 1 and 28 and that the water-main collapse occurred between stations 14 and 16. Thus, while Mr. Alviti could *Page 24 
not pinpoint the exact location of the leak, his conclusion that it occurred within the test zone was credible and supported by the records. Mr. Alviti credibly opined with the requisite degree of engineering certainty and probability that due to the young age of the pipe, the accident on July 1, 2004 was caused by the improper installation, operation, or maintenance of the water main. Thus, his conclusion that negligent construction and/or maintenance of the water main proximately caused the water main to collapse accident was not clearly wrong.
Given that water mains do not ordinarily collapse in the absence of negligence, and considering that both Defendants were aware that the pipe was leaking when RIEDC ratified the contract without insisting upon further testing, a reasonable jury could have concluded that both Defendants negligently constructed and/or maintained the water main. Although Defendants' experts theorized about other possible causes for the water-main collapse, reasonable minds could have concluded that they failed to present sufficient persuasive evidence to support their theories. As a result, the jury reasonably could have concluded that the other possible causes were speculative and were sufficiently eliminated by the lack of evidence of those causes. Consequently, D'ambra's Motion for a New Trial Based upon an alleged erroneous res ipsa loquitur
instruction is denied.
 C Damages
Finally, D'Ambra moves for Judgment as a Matter of Law, or in the alternative, a Motion for a New Trial, or a remitittur, on the issue of damages. It asserts that Plaintiff was not entitled to $70,000 because the award was speculative and unsupported by the evidence. Specifically, D'Ambra avers that Plaintiff inflated the sum for lost wages. D'Ambra further maintains that the *Page 25 
award was excessive because Plaintiff failed to mitigate its damages by not returning to work until the first week of March 2005, some thirty-five weeks after the water-main collapse.
 1 Speculative Damages
D'Ambra maintains that the evidence demonstrates that the weekly earnings figure only should have been $1920.16, but that instead, Plaintiff's earnings figures for the period in question were inflated to $2300 per week. The Plaintiff contends that the evidence supported the damage award.
In Rhode Island,
 "[t]he question of the amount of damages is important, as well as that of liability, and the trial court is . . . duty bound to give it serious consideration, keeping in mind that the burden is upon the plaintiff to prove the damages by a preponderance of the evidence. A plaintiff should be compensated for all his [or her] damages of which the defendants' negligence was the proximate cause, but no claim for damages should be allowed to stand where such claim is not supported by the required degree of proof, or is speculative, or imaginary, or is clearly attributable to other causes." Perrotti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005) (quoting Andrews v. Penna Charcoal Co., 55 R.I. 215, 222, 179 A. 696, 700 (1935)).
It is undisputed that Plaintiff's tractor trailer was damaged when the water main collapsed, and that it did not resume business until approximately thirty-five weeks later. The Plaintiff submitted evidence that the business had been required to expend $300 for towing, $5018.50 to repair the tractor, and $1500 to replace the trailer. During the thirty-five week period that Plaintiff did not operate, the business did not receive any compensation. Mr. Berganza testified that based upon documented earnings history from before and after the incident, the business lost $2300 per week during that period. After adjusting the figures to *Page 26 
reflect business expenses that would have been incurred, Mr. Berganza testified that the net loss to the business was $69,678. The jury awarded $70,000.
Without weighing the evidence or considering the credibility of the witnesses, and considering the evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could have found Plaintiff proved its damages by a preponderance of the evidence in the record. Consequently, the Motion for Judgment as a Matter of Law on the alleged speculative nature of the damages is denied.
After reviewing the evidence submitted by Plaintiff, the Court concludes that the Motion for a New Trial on the amount of the damages also must be denied. Mr. Berganza's testimony was articulate, intelligent and credible. He made a detailed recitation of his damages that the Court finds persuasive and credible. The Court observes that while there is a difference between the earning figure proffered by Plaintiff and that calculated by D'Ambra, the Court cannot conclude that Plaintiff's figure was so speculative such that it should be set aside.See Perrotti v. Gonicberg, 877 A.2d at 636. Accordingly, the Motion for a New Trial on the amount of damages is denied.
(ii) Mitigation of Damages
D'Ambra asserts that the jury should not have awarded $70,000 because Plaintiff failed to mitigate its damages during the thirty-five weeks that it took to repair/replace the tractor-trailer. Specifically, it asserts that Mr. Berganza should not be allowed to recover lost wages because he made no attempt to secure alternative employment during this period.
Under the doctrine of avoidable consequences, "a party may not recover damages `that the injured party could have avoided without undue risk, burden or humiliation.'" Bibby's *Page 27 Refrigeration, Heating Air Conditioning, Inc. v. Salisbury,603 A.2d 726, 729 (R.I. 1992) (quoting Restatement (Second) Contracts § 350(1) (1981)). Accordingly,
 "a party claiming injury that is due to breach of contract or tort has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages. This rule prevents the injured party from sitting silent while the damages accumulate. It is important to differentiate between the legal duty to mitigate and actual success in mitigation. The law commands reasonable efforts and ordinary care in the circumstances, not Herculean exertion. Moreover, although the law places a duty to mitigate upon the party claiming injury, failure to do so does not create liability; that party is simply prohibited from recovering that amount of damages he or she could have reasonably avoided. However, the defendant has the burden of proving that the plaintiff was delinquent in executing this duty." Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026-1027 (R.I. 1998).
In the instant matter, it is undisputed that Mr. Berganza did not work during the thirty-five weeks that his tractor-trailer was out of commission and that he did not suffer from any illnesses during this period that would prevent him from doing so. D'Ambra appears to be asserting that this evidence demonstrates that Plaintiff failed to mitigate its damages. However, this assertion ignores Mr. Berganza's credible testimony as to the reasons why he did not work
During direct examination, Mr. Berganza testified about the delays Plaintiff suffered in getting the tractor repaired, as well as the difficulties it had in financing and finding a used trailer to replace the old one which had been destroyed. As for not seeking alternative work as a truck driver for another trucking company, Mr. Berganza testified that the reason for not doing so was that he feared losing his ICC authority as an independent trucker, thereby causing him to lose the business.
With respect to the Motion for Judgment as a Matter of Law for failure to mitigate, the Court finds that a reasonable jury could have found that circumstances and uncertain time constraints prevented Mr. Berganza from seeking alternative employment, particularly *Page 28 
employment as a truck driver for another company. Thus, the motion is denied. As for the New Trial Motion on the same issue, the Court finds Mr. Berganza's testimony to be persuasive and wholly credible. D'Ambra had a duty to produce evidence proving that Plaintiff could have avoided its damages through reasonable efforts; however, it did not introduce sufficient evidence to meet this burden. D'Ambra did not show that Plaintiff had the opportunity to enter into alternative employment with a third party and did not introduce evidence showing that Plaintiff unreasonably allowed its damages to accumulate. Accordingly, the Motion for a New Trial also is denied.
 IV Conclusion
In view of the foregoing, the Court denies Defendants' renewed Motions for Judgment as a Matter of Law and Motions for a New Trial. The facts of this case were such that reasonable persons could have drawn conflicting inferences regarding Defendants' negligence and the amount of damages stemming from said negligence. Accordingly, the jury's verdict responds to the merits of the underlying dispute and administers substantial justice. Furthermore, the Court finds no error of law with respect to its evidentiary rulings and its jury instructions.
Counsel shall submit an appropriate order for entry.
[1] Rule 50(b) provides in pertinent part: "A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative." Super. R. Civ. P. 50(b)
[2] Pursuant to R.I. Super. R. Civ. P. 51(b), "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." (Emphasis added.) Accordingly, this Rule "bars a party from challenging an erroneous instruction unless [the party] lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of [the trial justice's] alleged error." Tyre v. Swain, 946 A.2d 1189, 1201 (R.I. 2008). The reason for this requirement is that "[a]bsent a sufficiently specific objection, the trial justice cannot be expected to divine the nature of counsel's objection." Id. In Rhode Island, it is well established that "jury instructions that are not objected to become the law of the case and are binding on both the jury and the trial justice when he or she passes on a motion for a new trial." Sarkisian v. The NewPaper, Inc.,512 A.2d 831, 836 (R.I. 1986).
[3] Rule 705 of the Rhode Island Rules of Evidence provides: "Unless the court directs otherwise, before testifying in terms of opinion, an expert witness shall be first examined concerning the facts or data upon which the opinion is based."
[4] Section 8-2-38 of the General Laws provides:
 "In every case, civil and criminal, tried in the [S]uperior [C]ourt with a jury, the justice presiding shall instruct the jury in the law relating to the action, and may sum up the evidence therein to the jury whenever he or she may deem it advisable so to do; but any material misstatement of the testimony by him or her may be excepted to by the party aggrieved." G.L. 1956 § 8-2-38.
[5] As already noted, although other theories of the cause of the water-main collapse were posited by defense experts; those experts produced no evidence to demonstrate that their theories were probable.
[6] Defense counsel timely objected to the res ipsa loquitur
instruction, asserting that
 "such an instruction is not appropriate in a case such as this where the nature of the alleged negligence is beyond the ken of a juror and in fact requires expert testimony as has this particular case and it's certainly not appropriate in a case such as this involving a contractor who finished a job and the alleged problem arose seven years after the contractor was off the job. It's not appropriate in cases like this where there is evidence in the case that the responsibility for this damage may have been with third parties or have arisen from causes that were totally unrelated to those of the defendant[s]." Trial Transcript at 65.
In view of this objection, the issue properly was preserved for this Court's consideration. Cf. Sarkisian v. NewPaper, Inc., 512 A.2d 831,836 (R.I. 1986) ("[j]ury instructions that are not objected to become the law of the case and are binding on both the jury and the trial justice when he or she passes on a motion for new trial"). *Page 1